**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHAMARIAE MARSHON JONES,<br><br>Defendant. | Case No. 2:17-cr-00042-APG-CWH<br><br>**REPORT AND RECOMMENDATION** |

Presently before the court is Defendant Shamariae Marshon Jones's Motion to Suppress Statement (ECF No. 76), filed on February 7, 2018, the government's response (ECF No. 78), filed February 21, 2018, and Jones's reply (ECF No. 79), filed February 28, 2018.  The court conducted an evidentiary hearing on April 17, 2018.  (Mins. of Proceedings (ECF No. 83).)

**I.  BACKGROUND**

Jones was arrested for bank robbery on January 26, 2017, and then transported to an FBI office for processing and interrogation.  FBI Special Agent Henry Schlumpf was in charge of the investigation, and conducted the interrogation.  At the beginning of the interrogation, Agent Schlumpf introduced himself as an FBI agent who was investigating robberies, and showed his credentials to Jones.  Jones's interrogation was video-taped in its entirety, and he made incriminating statements regarding the charges.

Based upon the court's review, the pertinent portion of the interrogation was as follows:

FBI AGENT: I'm going to tell you everything that's going on.  I'll tell you all the things I told Edwin.[1]  But before that we got to do the advice of rights.

JONES: Oh man I'm going to jail.  (Inaudible).

---

[1] Edwin Arnold is Jones's co-defendant.

1           FBI AGENT: What kind of time do you think you're looking at?

2           JONES: I'm telling you sir, I'm trying to see what the hell I'm looking at.

3           FBI AGENT: Okay, I'll explain all that to you. (Pause). But I can't talk to

4 you about your case until we do the advice of rights. [Reading from a piece of

5 paper]. Before we ask you any questions you must understand your rights. You

6 have the right to remain silent. Anything you say can be used against you in court.

7 You have the right to talk to a lawyer for advice before we ask you any questions.

8 You have the right to have a lawyer with you during questioning. If you cannot

9 afford a lawyer one will be appointed for you before any questioning if you wish.

10 If you decide to answer questions now without a lawyer present, you have the right

11 to stop answering at any time.

12          I won't ask you any questions if you don't want me to, but I would like to

13 talk with you. So, can you read that sentence out loud?

14           JONES: [Reading from a piece of paper] I have read the statement of my

15 rights and I understand what my rights are. At this time, I am willing to answer

16 questions without a lawyer present.

17           FBI AGENT: But you don't have to answer any questions. But I'll explain

18 stuff to you. You need to sign. [Pointing at paper.] So, if you're cool with that

19 just . . . (inaudible).

20          [Jones signs].

## II. ANALYSIS

**A. Pre-Warning Statement**

Jones first argues that the pre-warning statement he made to Agent Schlumpf regarding potential prison time must be suppressed because he was in custody and was questioned without any *Miranda* warnings. Specifically, Jones moves to suppress his response to Agent Schlumpf's question, "[w]hat kind of time do you think you're looking at?" as follows: "I'm telling you sir, I'm trying to see what the hell I'm looking at." Neither side disputes that Jones was in custody when he met with Agent Schlumpf. But the government indicates it does not intend to introduce

Jones's statement "I'm telling you sir, I'm trying to see what the hell I'm looking at." Accordingly, the court will recommend that the motion to suppress this statement be denied as moot.

### B. Sufficiency of the *Miranda* Warnings

Jones next argues that, given the circumstances, the *Miranda* warnings given by Agent Schlumpf were muddled and equivocal and therefore inadequate. Jones argues that the pre-warning question, "what kind of time do you think you are looking at" assumed that Jones was guilty, and that the *Miranda* warnings which followed were not important because the agent started to question without them. Further, Jones argues that Agent Schlumpf downplayed the nature of the interrogation by saying his intention was to talk to Jones and explain everything that was going on. Jones argues that the agent undermined the adversarial nature of the interrogation by saying, "I would like to talk to you." The government responds that Agent Schlumpf adequately conveyed the necessary elements required by *Miranda*.

The obligation to administer *Miranda* warnings attaches once a person is subject to "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). "Custody" turns on whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *U.S. v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005) (citing *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002)). In addition to being in custody, the accused must also be subject to interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).

Jones does not contend that the explanation of rights conveyed in the warnings themselves was deficient, but rather, that the comments made by the agent undermined the warnings. But Agent Schlumpf began the interrogation by indicating that before they could discuss the investigation, the advice of rights had to be done. This prompted a comment from Jones that he was going to jail, and Agent Schlumpf asked him how much time he thought he was facing. Jones said, in essence, that he wanted to know how much time he was looking at, and Agent Schlumpf said he would explain it to Jones, but first he needed to explain his rights. Jones argues that this minimized the importance of the warnings, but Agent Schlumpf's two statements of the necessity of first giving the warnings is more reasonably interpreted as highlighting the

importance of the rights advisement. Moreover, Agent Schlumpf's statement, "I won't ask you any questions if you don't want me to, but I would like to talk with you" reinforces a fundamental *Miranda* right to remain silent. The fact that the agent wanted to talk to Jones does not muddle or equivocate the warnings—in all interrogations, the law enforcement officer obviously wants to talk to the suspect.

After Jones read aloud the statement that he understood and waived his rights, Agent Schlumpf again indicated, "but you don't have to answer any questions. But I'll explain stuff to you. You need to sign. [Pointing at paper.] So, if you're cool with that just . . . [inaudible]." Once again, Agent Schlumpf reiterated a fundamental *Miranda* right to remain silent prior to Jones signing the waiver provision of the advice of rights. Agent Schlumpf's comments did not muddle or undermine, but rather reinforced and further explained Jones's *Miranda* rights. Accordingly, the court finds that the substance and content of the *Miranda* warnings were sufficient. *See United States v. Loucious*, 847 F.3d 1146, 1149 (9th Cir. 2017) (the inquiry is simply whether the warnings reasonably convey to the suspect his rights as required by *Miranda*.).

**C. Sufficiency of the Rights Waiver**

Jones argues that because of the inadequacy of the warnings and the agent's demand that Jones read the consent aloud, while not allowing Jones to actually read the rights form which had just been read to him, the waiver of *Miranda* rights was deficient. The government responds that there is no evidence that Jones did not understand his rights because he did not ask any questions or indicate that he did not understand his rights.

For inculpatory statements made by a defendant during custodial interrogation to be admissible in evidence, the defendant's "waiver of Miranda rights must be voluntary, knowing, and intelligent." *United States v. Binder*, 769 F.2d 595, 599 (9th Cir. 1985) (citing *Miranda*, 384 U.S. at 479). The prosecution bears the burden of proving by a preponderance of the evidence that a defendant knowingly and intelligently waived his *Miranda* rights. *See Colorado v. Connelly*, 479 U.S. 157 (1986). To satisfy this burden, the prosecution must introduce sufficient evidence to establish that under the "totality of the circumstances," the defendant was aware of

4

"the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The determination of whether a waiver was valid "depends upon the totality of the circumstances including the background, experience, and conduct of the defendant." *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998). The government's burden to make such a showing "is great," and the court will "indulge every reasonable presumption against waiver of fundamental constitutional rights." *United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

The totality of the circumstances were as follows: Jones's mother, Shanika Miles, testified that as a child, Jones suffered from Attention Deficit Hyperactivity Disorder (ADHD) and received special education services while in school. Jones only completed the 11th grade. She testified that Jones had a short attention span, was easily confused, and typically had to have information explained to him multiple times before he finally understood.

Agent Schlumpf testified that he was not present when Jones was arrested. Prior to the interrogation, however, he was informed by the officers who arrested Jones that Jones was being cooperative, wanted to talk, and consented to a search of the car he was driving, which revealed his co-defendant, Mr. Arnold, in the trunk. Agent Schlumpf was present at the FBI office where Jones was "booked," that is, gave fingerprints and biographical information, and testified he noticed that Jones had no difficulty communicating responses to questions. The interrogation room was small and had no windows. Jones was handcuffed to a metal bar located beside the desk where he sat, facing Agent Schlumpf.

After Agent Schlumpf read the Miranda rights aloud, he told Jones, "I won't ask you any questions if you don't want me to, but I would like to talk with you. So, can you read that sentence out loud?" He had placed the document he had read in front of Jones, and then asked him to read the following sentences aloud: "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present." Review of the video reveals that when Jones was shown the advice of rights statement, Jones did not have time to read the statement that had just been read to him by Agent Schlumpf. With no difficulty, however, Jones read aloud the statement that he had read the statement of

5

rights and that he understood the rights, and that he is willing to answer questions without a lawyer present. Agent Schlumpf said "[b]ut you don't have to answer any questions. But I'll explain stuff to you, you need to sign. [Pointing at paper.] So, if you're cool with that just . . . [trails off]." Jones then signs the "consent" portion of the advice of rights form. Agent Schlumpf's demeanor was calm and supportive, not confrontational. Jones's demeanor is concerned, but attentive.

Agent Schlumpf testified that it was his practice to ask suspects to read the consent portion of the statement to ensure they are literate. He further indicated that he did not ask questions regarding Jones's educational background but noted that during the booking process, Jones seemed to understand and appropriately responded to various questions, and had no difficulties communicating.

There is no evidence to suggest that Jones did not understand the *Miranda* rights. Agent Schlumpf asked Jones if he "was cool with" signing the consent portion of the advice of rights form, which was that he understood his rights and would answer questions without a lawyer. Jones signed, and did not ask any questions, act as if he was confused, or indicate he did not understand his rights. Although Jones suffered from ADHD while in school, there is no evidence to suggest that he was unable to ask questions if he was confused, or to understand the consequences of his statements to Agent Schlumpf. Contrary to Jones's argument, Agent Schlumpf's comments did not mischaracterize the nature of the interrogation. Based upon Jones's statement that he was "going to jail," he knew he was in trouble and that the FBI was investigating his involvement in the robberies.

Jones offers no evidence that his will was overborne by the circumstances surrounding the confession. During the interrogation, which lasted 24 minutes, Jones asked several questions about the charges he was facing, and was told about the benefits of cooperating with the investigation. He eventually was forthcoming and had a calm demeanor as he explained his participation in the robberies.

Considering the totality of the circumstances, the court finds that the government has demonstrated by a preponderance of the evidence that Jones understood and was aware of "the

nature of the right being abandoned and the consequences of the decision to abandon it." *See Moran*, 475 U.S. at 421. Accordingly, his waiver of *Miranda* rights was voluntary, knowing, and intelligent.

### III.  CONCLUSION AND RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that Jones's Motion for Suppression of Statement (ECF No. 76) be denied.

### IV.  NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: April 26, 2018

C.W. HOFFMAN, JR.
UNITED STATES MAGISTRATE JUDGE